1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW MANCILLA, | Case No. 1:14-cv-00935-DAD-EPG-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| W.L. MUNIZ, | |
| Respondent. | |

Petitioner Andrew Mancilla is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition for writ of habeas corpus, Petitioner raises the following claims for relief: (1) the evidence at trial established a single offense of felony vandalism rather than three separate offenses; (2) the trial court failed to *sua sponte* instruct the jury on the <u>Bailey</u> rule of aggregation; (3) Petitioner received ineffective assistance of counsel because counsel failed to request an instruction on aggregation and failed to move to strike Petitioner's prior conviction; (4) the trial court erroneously instructed the jury on conspiracy as a separate and independent theory of derivative criminal liability; and (5) there was insufficient evidence to support the jury's true findings that Petitioner personally inflicted great bodily injury during the commission of the two attempted murder offenses.

For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

# I.

# BACKGROUND

In 2010, Petitioner was convicted after a jury trial in the Kings County Superior Court of two counts of attempted murder (counts 1, 2), three counts of assault with a deadly weapon (counts 3, 4, 5), one count of burglary (count 6), three counts of felony vandalism (counts 7, 8, 9), and one count of active participation in a criminal street gang (count 10). The jury found true special allegations that Petitioner personally inflicted great bodily injury during the commission of counts 1, 2, 4, 5, 6, and 10, and that counts 1 through 9 were committed for the benefit of a criminal street gang. The jury also found true two prior strike allegations. On November 17, 2010, Petitioner was sentenced to two aggregate terms of forty years to life (counts 1, 2), an aggregate term of thirty years to life (count 3), and three aggregate terms of twenty-eight years to life (counts 7, 8, 9). All terms were ordered to run consecutively. Sentences were imposed and stayed on counts 4, 5, 6, and 10. In total, Petitioner was sentenced to a term of 194 years to life for his 2010 convictions. At the same hearing, Petitioner also was sentenced in a prior case, No. 09CM7180, to three years (count 1) and a consecutive term of eight months (count 2). This sentence was ordered to run consecutive to the sentence for the 2010 convictions. People v. Mancilla, No. F061394, 2013 WL 98794, at *1 (Cal. Ct. App. Jan. 9, 2013).

The California Court of Appeal, Fifth Appellate District, affirmed the judgment, but modified the sentence for count 2 in Case No. 09CM7180. Mancilla, 2013 WL 98794, at *1. The California Supreme Court denied Petitioner's petition for review without prejudice on April 17, 2013. (LD[1] 6). Petitioner did not file any state habeas petitions.

On June 8, 2014, Petitioner filed the instant federal petition for writ of habeas corpus in the Sacramento Division of the Eastern District of California. (ECF No. 1). On June 18, 2014, the petition was transferred to this Court. (ECF No. 4). On July 17, 2015, the Court granted Petitioner's motion to withdraw unexhausted claims from the petition. (ECF No. 30). Respondent has filed an answer to the remaining claims in the petition. (ECF No. 34).

///

---

[1] "LD" refers to the documents lodged by Respondent on December 3, 2014. (ECF No. 22).

# II.

## STATEMENT OF FACTS[2]

Oscar Ocampa (Oscar) and Zaira Ramirez (Zaira) lived with their children in a house located on Dairy Avenue in Corcoran (Oscar's house). Zaira's brother, Edgar Ramirez (Edgar), lived with them. Edgar's bedroom area was in the garage, which had two doors; one door led inside the house and the other one led to an outdoor parking area (the outside door).

On the evening of January 2, 2010,[n.3] Julio Diaz, Manuel Andrade (Manuel) and Manuel's brother, Juan Ruiz, were drinking and playing video games in the garage. Around midnight, Ruiz went into the front yard to smoke cigarettes. Appellant and Juan Alvarez walked by Oscar's house.[n.4] They yelled, "Norte and stuff like that." Ruiz and one of the men began fistfighting. Edgar, Diaz and Manuel heard the commotion and went outside. Manuel attempted to break up the fight and someone hit him on the back of the head. Oscar heard appellant and Alvarez say, "[W]e are Norte and we are going to fuck you up, we are coming back." Then they left. Edgar and his friends went back inside the garage.

> [n.3] Unless otherwise noted all dates refer to 2010.

> [n.4] Although Manuel and Ruiz did not specifically identify the two men who walked by Oscar's house during their trial testimony, it is reasonably inferable from the entirety of their testimony that the two men were appellant and Alvarez.

Manuel's cousin, Tony Andrade (Tony), passed by Oscar's house. Seeing Ruiz's parked car, he stopped and joined the group in the garage. When Tony learned that appellant and Alvarez said that they were going to return, Tony armed himself with a large tree branch and stood outside Oscar's house. Edgar, Manuel and Ruiz armed themselves with large sticks and joined Tony outside. Oscar, Zaira and the children remained inside the house. Oscar called the police.

Appellant and Alvarez returned to Oscar's house. Malaquias Guzman accompanied them. Appellant stood in the middle of the street swinging a stick or bat. Manuel told Guzman that the police were coming. Guzman pulled a gun out of his pocket. Everyone fell to the ground except appellant and Alvarez. Ruiz tried to crawl under Zaira's Chevrolet Tahoe. Appellant broke the Tahoe's back window, windshield and a side window. Appellant also broke the back window of Ruiz's Chevrolet Camaro and two windows on Oscar's house.

Manuel, Tony and Ruiz got into the Camaro and drove away. Appellant's mother lived in a house located on Lorena Avenue, which is around the block from Dairy Avenue. Tony got out of the Camaro and broke one of the windows on appellant's mother's house.

Meanwhile, Edgar and Diaz went back inside the garage. About six men in dark clothes joined appellant and Alvarez in front of Oscar's house. The men ran towards the house and threw beer bottles at it.

---

[2] The Court relies on the California Court of Appeal's January 9, 2013 opinion for this summary of the facts of the crime. <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009). The Court will address the reasonableness of the Court of Appeal's determinations of fact in section IV(E), *infra*.

Five young-looking men kicked open the outside door and entered the garage. Zaira and Oscar heard the sounds of fighting. Oscar did not recognize any of the voices. Then Oscar saw five young men exit the garage by the outside door. One of the men, not appellant, had a cut on his head and his shirt was covered in blood. The men who exited the garage all fled in the same direction towards Lorena Avenue. The injured man fell, and "his other friends picked him up." The men who had not gone into the garage ran away along a different street.

When Zaira went into the garage she saw that Diaz was bleeding from the back of his head and Edgar was unconscious.[n.5] Both men were hospitalized. Diaz sustained puncture wounds to his abdomen, rib cage and one armpit. He had lacerations on the back of his head, over his left eyebrow, right arm and hand. Edgar sustained puncture wounds to his torso, below his right armpit and his right leg. One of his lungs collapsed. He had lacerations on his head, left arm and right thigh.

> [n.5] Edgar and Diaz said that they did not remember anything about the stabbing and did not identify any of the assailants.

Former Corcoran Police Detective Sergeant Jason Bietz testified that when he arrived at the crime scene he noticed "a large amount of blood in the driveway, sidewalk and the asphalt in front of the residence." Blood drops were discovered leading from the outside door to the sidewalk, "north to Lorena Avenue, and then west on Lorena Avenue." The blood drops ended at the house where appellant's mother lived. Sergeant Bietz estimated that there were more than 100 blood drops. He placed evidence placards on the blood drops, photographed them and requested that some of them be collected for testing. Sergeant Bietz testified that he directed crime scene technicians to take two samples of blood that was deposited on the outside doorway because "I believe that I had two distinct different trails of blood that were left by two different people, and by taking the swab from each of those trails would identify the person who left those two samples behind."

Some of the blood drops were sampled and tested for DNA identification. A sample from blood found on the outside doorway was consistent with the DNA profile of Nathaniel. A sample of the blood found outside the house where appellant's mother lived was consistent with the DNA profile of Nathaniel. Another sample of the blood found outside the house where appellant's mother lived was consistent with appellant's DNA profile.[n.6] Deposits of blood were found inside the garage, on the driveway of Oscar's house, the fence in front of Oscar's house, the sidewalk and the street in front of Oscar's house. A sample of blood on the Camaro's trunk lid was collected; it was consistent with appellant's DNA profile.

> [n.6] Individual blood droplets along the trail from the outside doorway to the house where appellant's mother lived were not tested.

Police found two clubs made from tree branches, an aluminum bat and a kitchen knife inside the garage. Swabs taken from the bat and one of the clubs were consistent with Alvarez's DNA profile. A swab taken from the other club and a sample of blood that was deposited on the handle of the knife were consistent with Diaz's DNA profile. A swab taken from the knife blade produced a mixture that was consistent with DNA profiles of Diaz, Nathaniel and Francisco.

A photographic lineup of 12 persons that included appellant, Alvarez and Guzman was compiled. Manuel and Tony selected photographs of all three men. Oscar selected photographs of appellant and Guzman. Ruiz selected a photograph of Guzman.

When appellant was arrested, his right hand was swollen and there was a cut on the middle finger. Alvarez had a black eye, several abrasions on the back of his head and a laceration on his scalp. Nathaniel and Francisco were injured.

Corcoran Police Officer Frank Castellanoz testified as a gang expert. He opined that appellant was an active Norteno gang member. Based on a hypothetical, he opined that the acts at Oscar's house during the night of January 2 and January 3 were committed in association with, at the direction of, or for the benefit of a Norteno criminal street gang.

Appellant testified that he was standing in his mother's backyard during the early morning hours of January 3 when he heard glass shattering. He walked to the front of her house and saw many people fighting in the street. The front window of his mother's house was broken. He picked up a large stick and started swinging it around. He hit the back window of the Camaro, cutting his finger. At this point, the fights stopped. Some of the people got into a car and drove away. The other people "took off." Appellant said that he telephoned an unnamed female and drove to Fresno with her, where they remained until approximately 9:30 a.m.

In rebuttal, Corcoran Police Officer Eric Essman testified that appellant told him that "earlier" in the evening on January 2, he and a female named "Sophia" traveled to Fresno, where they remained "throughout the evening." Appellant said that "he had fallen off of a bicycle while doing a trick and cut his finger on a piece of glass." Appellant did not mention anything about people fighting in front of his mother's house. Officer Essman did not see any glass that was consistent with a car window in the street in front of appellant's mother's house during the morning of January 3.

Mancilla, 2013 WL 98794, at *2–3.

### III.

### STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Kings County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

///

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97-98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, the "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed de novo. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A

state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

## IV.

### REVIEW OF CLAIMS

#### A. Aggregation of Felony Vandalism Offenses

Relying on People v. Bailey, 55 Cal. 2d 514 (1961), Petitioner asserts that the evidence at trial established a single aggregated offense of felony vandalism rather than three separate offenses because there was "'one intention, one general impulse, and one plan,' which was to cause damage to the property of rival gang members." (ECF No. 1 at 42).[3] Respondent argues that this claim is not cognizable on federal habeas review because it is an issue of California state law. (ECF No. 34 at 25).

Petitioner does not allege any violation of federal law. Whether, pursuant to Bailey, Petitioner should have been convicted of only one count of felony vandalism is an issue of

---

[3] Page numbers refer to the ECF page numbers stamped at the top of the page.

1  California state law that is not cognizable in federal habeas proceedings. See Wilson v.

2  Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that

3  renders a State's criminal judgment susceptible to collateral attack in the federal courts.");

4  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court

5  to reexamine state-court determinations on state-law questions."). Accordingly, Petitioner is not

6  entitled to federal habeas relief on this claim, and it must be denied.

7  **B. Trial Court's Failure to *Sua Sponte* Instruct the Jury on Aggregation**

8  Related to the prior claim, Petitioner contends that the jury should have been instructed to

9  determine whether the evidence established one or three offenses of felony vandalism pursuant

10 to the Bailey rule. (ECF No. 1 at 44). Respondent argues that the omission of a jury instruction

11 under state law is not a cognizable federal habeas claim. (ECF No. 34 at 27). Even if a federal

12 due process claim is implicated, Respondent argues that the absence of the instruction did not

13 render the trial fundamentally unfair and that Petitioner did not suffer actual prejudice such that

14 habeas relief is warranted. (Id. at 27–28).

15 The Court "must construe *pro se* habeas filings liberally." Allen v. Calderon, 408 F.3d

16 1150, 1153 (9th Cir. 2005) (citing Maleng v. Cook, 490 U.S. 488 (1989)). To the extent that

17 Petitioner raises a federal due process claim with respect to the trial court's failure to *sua sponte*

18 instruct the jury on aggregation, the Court notes that this claim may not have been fairly

19 presented to the California Supreme Court and thus, may implicate exhaustion concerns.[4]

20 However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the

21 merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal

22 claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in

23 Granberry v. Greer, 481 U.S. 129, 135 (1987)).

24

---

25 [4] "Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the *federal legal theory* on which his claim is based so that the state courts have a "fair opportunity" to apply controlling

26 legal principles to the facts bearing upon his constitutional claim.'" Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008) (emphasis added) (quoting Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003)). In the petition for review in

27 the California Supreme Court, Petitioner did not reference a specific federal constitutional guarantee with respect to this claim. (LD 5). Further, Petitioner did not reference a specific federal constitutional guarantee with respect to this

28 claim in the California Court of Appeal, (LD 1), and the claim was denied on state law grounds. See Mancilla, 2013 WL 98794, at *5.

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). This includes "entitle[ment] to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). Mathews involved a federal criminal defendant who denied commission of the offense yet also raised the inconsistent defense of entrapment and requested an entrapment instruction. The Ninth Circuit has interpreted Mathews as holding that a trial court's failure to give a requested instruction on a defense theory of the case that is supported by sufficient evidence violates the defendant's due process right to present a complete defense.[5] See, e.g., Clark v. Brown, 450 F.3d 898, 904–05 (9th Cir. 2006); Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004) ("Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable."); Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002) ("[T]he right to present a defense 'would be empty if it did not entail the further right to an instruction that allowed the jury to consider the defense.'" (citation omitted)); Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000) ("It is well established that a criminal defendant is entitled to adequate instructions on the defense theory of the case.").

As established by both Petitioner's own testimony and defense counsel's closing argument, the defense theory presented at trial was that Petitioner did not vandalize the Tahoe or Oscar's[6] house. (7 RT[7] 1557; 8 RT 1910–13). Petitioner did not present or rely on an aggregation theory of defense at trial, nor did Petitioner seek a jury instruction on aggregation.[8] Petitioner was entitled to jury instructions regarding his theory of defense, and the trial court's instructions

---

[5] "Although circuit caselaw is not governing law under AEDPA, [the Court] may look to circuit precedent in determining what law is clearly established." Byrd v. Lewis, 566 F.3d 855, 860 n.5 (9th Cir. 2009) (citing Duhaime v. Ducharme, 200 F.3d 597, 600–01 (9th Cir. 2000)). In addition, Ninth Circuit "precedents may be pertinent to the extent that they illuminate the meaning and application of Supreme Court precedents." Campbell v. Rice, 408 F.3d 116, 1170 (9th Cir. 2005) (en banc).

[6] To avoid confusion, the Court will refer to individuals as they were referenced by the California Court of Appeal in the January 9, 2013 opinion.

[7] "RT" refers to the Reporter's Transcript on Appeal in Case No. F061394, which Respondent lodged with the Court on March 11, 2016. (ECF No. 38).

[8] The Court will address defense counsel's failure to request such an instruction in section IV(C)(2), *infra*, regarding Petitioner's ineffective assistance of counsel claim.

were consistent with the theory of defense that was presented at trial. The Court finds that Petitioner was afforded a meaningful opportunity to present a complete defense. As it is "perfectly clear" that Petitioner does not raise a colorable federal due process claim with respect to the trial court's failure to *sua sponte* instruct the jury on aggregation, the Court may deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

### C. Ineffective Assistance of Counsel

1. Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards

created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Richter</u>, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015) (quoting <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Richter</u>, 562 U.S. at 105.

### 2.   Failure to Request Instruction on Aggregation

Petitioner claims that his trial counsel was ineffective for failing to request a jury instruction on aggregation and that there simply could be no satisfactory explanation for defense counsel's failure even if the theory of defense was that Petitioner was not guilty of any offense. (ECF No. 1 at 45). Respondent argues that defense counsel's performance was not deficient because counsel made the reasonable decision to instruct the jury with charges related to Petitioner's theory of defense rather than one which undermined the theory presented at trial. Further, Respondent argues that Petitioner cannot show how counsel's failure to request the aggregation instruction disadvantaged him at trial. (ECF No. 34 at 32).

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim also was raised in the petition for review, which the California Supreme Court summarily denied. The Court presumes that the California Supreme Court adjudicated the claim on the merits. <u>See</u> <u>Richter</u>, 562 U.S. at 99. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2276 (2015); <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1094 n.1 (2013); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991).

In denying Petitioner's ineffective assistance claim with respect to counsel's failure to request an instruction on aggregation, the California Court of Appeal stated:

*///*

Appellant argues that conviction of one count of vandalism is "for all logical, practical, and legal purposes, lesser-included within three counts of violation of the same statute." Therefore, the trial court had a sua sponte duty to craft an instruction on the principle of aggregation. Appellant also argues that defense counsel's failure to request an instruction on aggregation constitutes ineffective assistance. We are not convinced.

As we have explained, the *Bailey* rule does not apply in circumstances such as this case where appellant committed three acts of vandalism on property owned by different people. Even if this court were to have concluded that the *Bailey* rule was applicable, the theory that appellant should have been convicted of only one felony vandalism count is an affirmative defense. It is not a lesser included offense. Trial courts have a sua sponte duty to instruct on affirmative defenses "'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' [Citation.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 157.)

Here, appellant's defense was inconsistent with the theory that is advanced on appeal. Appellant testified that he broke the Camaro's windows after the car's occupants broke a window on his mother's house. He denied going to Oscar's house and testified that he did not break the Tahoe's windows or break a window at Oscar's house. Defense counsel's closing argument was consistent with appellant's testimony; he argued that appellant did not vandalize the Tahoe or Oscar's house. If defense counsel were to have requested an instruction on aggregation it would have directly conflicted with appellant's testimony and defense counsel's closing argument.[n.9] Thus, even if the *Bailey* rule applied in this case, the trial court did not have a sua sponte obligation to instruct on aggregation. The ineffective assistance claim fails for the same reason. If defense counsel had requested an aggregation instruction it would have been inconsistent with the theory of the defense. (See *People v. Wader* (1993) 5 Cal.4th 610, 643 [ineffective assistance claim rejected where instruction would have been inconsistent with theory of the case].) Thus, neither instructional error nor ineffective assistance appears.

[n.9] The law governing direct review of ineffective assistance claims is undisputed:

"... First, a defendant must show his or her counsel's performance was 'deficient' because counsel's 'representation fell below an objective standard of reasonableness [¶] ... under prevailing professional norms.' [Citations.] Second, he or she must then show prejudice flowing from counsel's act or omission. [Citations.] We will find prejudice when a defendant demonstrates a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.] 'Finally, it must also be shown that the [act or] omission was not attributable to a tactical decision which a reasonably competent, experienced criminal defense attorney would make.' [Citation.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 610–611.)

Mancilla, 2013 WL 98794, at *5.

///

The state court decision is not contrary to, or an unreasonable application of, clearly established federal law. The California Court of Appeal correctly set forth the <u>Strickland</u> standard and found that counsel's failure to request an instruction that directly conflicted with the theory of defense presented at trial was not objectively unreasonable. Petitioner testified that although he broke the windows on the Camaro, he did not break windows on the Tahoe or at Oscar's house, and counsel's closing argument reflected the same. (7 RT 1557; 8 RT 1910–13). "Where counsel pursues one theory of defense over another, counsel's lack of request for a jury instruction on the alternate theory does not constitute deficient performance." <u>Pensinger v. Chappell</u>, 787 F.3d 1014, 1031 (9th Cir. 2015) (citing <u>Clabourne v. Lewis</u>, 64 F.3d 1373, 1382–83 (9th Cir. 1995)). The Court finds that the state court's denial of Petitioner's ineffective assistance claim for counsel's failure to request a jury instruction on aggregation is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this claim, and it must be denied.

      3.   <u>Failure to File Motion to Strike Petitioner's Prior Conviction</u>

Petitioner also claims that his trial counsel was ineffective for failing to move to strike one of Petitioner's prior convictions in the interest of justice. (ECF No. 1 at 46–48). Respondent argues that the state court's denial of this claim was not objectively unreasonable in light of clearly established Supreme Court authority. (ECF No. 34 at 33).

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim also was raised in Petitioner's petition for review, which the California Supreme Court summarily denied without prejudice to any relief Petitioner may be entitled to after it decided the then-pending case of <u>People v. Vargas</u>, 59 Cal. 4th 635 (2014).[9] (LD 6). The Court presumes that the California Supreme Court adjudicated the claim on the merits. <u>See</u> <u>Richter</u>, 562 U.S. at 99. The Court

---

[9] From the record before the Court, it does not appear that Petitioner pursued relief in state court after the California Supreme Court decided <u>Vargas</u>, either through the California state habeas process or in some other manner. Whether Petitioner is entitled to have one of his prior strike convictions dismissed pursuant to <u>Vargas</u>, which is distinct from whether counsel rendered ineffective assistance in failing to file a motion to strike a prior conviction, is an issue of state law that is properly addressed to the California state courts for resolution.

reviews the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In rejecting Petitioner's ineffective assistance of counsel claim with respect to counsel's failure to move to strike one of Petitioner's prior convictions, the California Court of Appeal stated:

> In a final claim, appellant argues that he received ineffective assistance of counsel because his attorney did not bring a motion to strike one of the prior convictions in the interest of justice. This claim fails on direct appeal and is properly pursued in a habeas corpus proceeding. (*People v. Pope* (1979) 23 Cal.3d 412, 426–428 (*Pope* ).)
>
> Appellant bears the burden of establishing inadequate assistance of counsel. (*Pope, supra,* 23 Cal.3d at p. 425.) To prevail, he must show both deficient performance and a reasonable probability of a more favorable outcome. (*People v. Duncan* (1991) 53 Cal.3d 955, 966 (*Duncan*).) When a defendant claims incompetence of counsel on direct appeal, he must overcome the presumption that, under the circumstances, the challenged error or omission might have been a strategic decision. Where the deficiency could have been a tactical choice, the claim is properly pursued in a petition for writ of habeas corpus. (*Pope, supra,* 23 Cal.3d at pp. 426–428.)
>
> In reviewing counsel's performance we are "to be highly deferential.... '... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*Duncan, supra,* 53 Cal.3d at p. 966.) We "accord great deference to counsel's tactical decisions." (*People v. Lewis* (2001) 25 Cal.4th 610, 674.) Otherwise, it would be "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and ... too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) There are countless ways to provide effective assistance and even the best attorneys would not defend a client in the same way. (*Ibid.*) Counsel does not have a duty to make futile or frivolous objections. (*People v. Memro* (1995) 11 Cal.4th 786, 834.)
>
> To resolve an ineffective assistance claim on direct appeal, the appellate record must clearly demonstrate that the alleged error was a "mistake beyond the range of reasonable competence." (*People v. Montiel* (1993) 5 Cal.4th 877, 911.) When the record does not illuminate the basis for the challenged act or omission and it is not necessarily an incompetent mistake, an ineffective assistance claim is more appropriately made in a petition for habeas corpus. Reviewing courts are not to become engaged " 'in the perilous process of second-guessing.' " (*Pope, supra,* 23 Cal.3d at p. 426.) They will not run the risk of unnecessarily ordering reversal in a case "where there were, in fact, good reasons for the aspect of counsel's

1  representation under attack. Indeed, such reasons might lead a new defense
2  counsel on retrial to do exactly what the original counsel did, making manifest the
   waste of judicial resources caused by reversal on an incomplete record." (*Ibid.*)

3  After carefully reviewing the record in this case, we conclude that it is insufficient
4  to allow us to determine whether defense counsel's failure to bring a motion to
   dismiss one of the prior strikes was an intentional tactical decision. Even if this
5  court were to assume that appellant's two prior strikes arose out of the same act,
   this "provide[s] a factor for a trial court to consider, but do[es] not *mandate*
6  striking a strike." (*People v. Scott* (2009) 179 Cal.App.4th 920, 931.) The nature
   of appellant's prior offenses is but one factor to be considered by the trial court
7  when exercising its discretion to dismiss a prior strike in the interests of justice.
   (*Ibid.; People v. Williams* (1998) 17 Cal.4th 148, 161.) As in *Scott, supra*, 179
8  Cal.App.4th at page 931, appellant "chose to reoffend, knowing he had two prior
   strike convictions." Appellant's current offenses are gang related and show a
9  substantial increase in violence above and beyond the violence involved in the
10 prior strikes. He was on felony probation when he committed these crimes. His
   criminal record spans his juvenile and adult years. He has not gone any
   appreciable amount of time free of crime and did not benefit from juvenile
11 programs or grants of probation.

12 On the silent record before us, we cannot simply assume that defense counsel's
   failure to file a motion to dismiss one of the prior strikes was an incompetent
13 error. The omission could have resulted from a tactical decision that such a
   motion would not have been successful. (*People v. Diaz* (1992) 3 Cal.4th 495,
14 566.) Appellant failed to meet his burden of establishing ineffective assistance on
   direct appeal. Any further challenge in this regard must be pursued in a habeas
15 corpus proceeding. (*Ibid.; People v. Cummings* (1993) 4 Cal.4th 1233, 1340.)

16 <u>Mancilla</u>, 2013 WL 98794, at *12–13.

17     The California Court of Appeal set forth principles consistent with <u>Strickland</u> and found

18 that Petitioner did not establish counsel's failure to move to dismiss one of the prior strikes

19 constituted deficient performance. The state court noted that counsel's failure to file a motion

20 could have been a tactical decision that such a motion would not be successful under <u>People v.</u>

21 <u>Scott</u>, 179 Cal. App. 4th 920, 931 (Cal. Ct. App. 2009), which held that circumstances where two

22 prior strike convictions are based on the same act "provide a factor for a trial court to consider,

23 but do not *mandate* striking a strike." At the time of Petitioner's trial, there was a conflict among

24 the California Courts of Appeal whether a trial court is required to dismiss one of two prior strike

25 convictions when they are based on the same act or whether "same act" circumstances merely

26 provide a factor for the trial court to consider. <u>See Scott</u>, 179 Cal. App. 4th 920, <u>disapproved by</u>

27 <u>Vargas</u>, 59 Cal. 4th 635; <u>People v. Burgos</u>, 117 Cal. App. 4th 1209 (Cal. Ct. App. 2004). In

28 California, decisions of every district of the Court of Appeal are binding upon all superior courts

in the state. Auto Equity Sales, Inc. v. Superior Court, 57 Cal. 2d 450, 455 (1962). When there are conflicting appellate decisions, superior courts "can and must make a choice between the conflicting decisions," id. at 456, but "[a]s a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so." McCallum v. McCallum, 190 Cal. App. 3d 308, 315 n.4 (1987). The Fifth Appellate District, which covers the Kings County Superior Court, had not published an opinion addressing the issue. The California Supreme Court subsequently resolved the conflict and held that two prior convictions arising out of a single act against a single victim cannot constitute two strikes under California's Three Strikes law. Vargas, 59 Cal. 4th at 637.

Although counsel's failure to file a motion to strike one of Petitioner's prior convictions now appears imprudent in light of the California Supreme Court's subsequent decision in Vargas, the Court cannot say that the state court's determination is an objectively unreasonable application of Strickland to the facts of this case under the AEDPA's doubly deferential review. See Richter, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."). The Court finds that the state court's denial of Petitioner's ineffective assistance claim for counsel's failure to move to strike a prior conviction is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on this claim, and it must be denied.

### D. Trial Court's Instruction on Conspiracy

Petitioner contends that the trial court erred when it instructed the jury on conspiracy as a theory of derivative liability. (ECF No. 1 at 49). Respondent argues that alleged errors of state law cannot form the basis for federal habeas corpus relief and that the state court's denial of this claim was not objectively unreasonable in light of clearly established Supreme Court precedent. (ECF No. 34 at 39).

1    The Court "must construe *pro se* habeas filings liberally." <u>Allen</u>, 408 F.3d at 1153 (citing

2    <u>Maleng</u>, 490 U.S. 488). To the extent that Petitioner raises a federal due process claim with

3    respect to the trial court's conspiracy instruction, the Court notes that this claim may not have

4    been fairly presented to the California Supreme Court and thus, may implicate exhaustion

5    concerns.[10] However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted

6    claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable

7    federal claim." <u>Cassett</u>, 406 F.3d at 624.

8        "[T]he fact that an instruction was allegedly incorrect under state law is not a basis for

9    [federal] habeas relief." <u>Estelle</u>, 502 U.S. 71–72. A federal court's inquiry on habeas review is

10   not whether the challenged instruction "is undesirable, erroneous, or even 'universally

11   condemned,' but [whether] it violated some right which was guaranteed to the defendant by the

12   Fourteenth Amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973). "In a criminal trial, the

13   State must prove every element of the offense, and a jury instruction violates due process if it

14   fails to give effect to that requirement." <u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004).

15   However, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the

16   level of a due process violation." <u>Id.</u> The pertinent question is "whether the ailing instruction by

17   itself so infected the entire trial that the resulting conviction violates due process." <u>Estelle</u>, 502

18   U.S. at 72 (internal quotation marks omitted) (quoting <u>Cupp</u>, 414 U.S. at 147).

19       The Court construes Petitioner's claim to be that his federal constitutional right to due

20   process was violated by the conspiracy instruction because conspiracy allegedly is an invalid

21   theory of derivative liability under California law. The California Court of Appeal held that the

22   challenged jury instruction accurately reflected state law and that conspiracy is a valid theory of

23   derivative liability. <u>Mancilla</u>, 2013 WL 98794, at *11. That holding is binding on this Court. <u>See</u>

24   <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . .

25

26   [10] "Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the *federal legal theory* on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'" <u>Davis</u>, 511 F.3d at 1009 (emphasis added)

27   (quoting <u>Kelly</u>, 315 F.3d at 1066). Although Petitioner raised a federal due process claim in the California Court of Appeal, Petitioner did not reference a specific federal constitutional guarantee with respect to this claim in his

28   petition for review in the California Supreme Court. (LD 1 at 29 n.10; LD 5).

binds a federal court sitting in habeas corpus."). The conspiracy instruction articulated a valid theory of derivative liability, and Petitioner does not show that the instruction somehow reduced the State's burden to prove every element of the charged offenses. The Court finds that Petitioner fails to demonstrate how the conspiracy instruction "so infected" his trial in an unconstitutional manner. As it is "perfectly clear" that Petitioner does not raise a colorable federal due process claim with respect to the conspiracy instruction, the Court may deny the claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

### E. Sufficiency of the Evidence Regarding Great Bodily Injury Enhancements

Petitioner contends that there was no substantial evidence to support the jury's true findings that Petitioner personally inflicted great bodily injury on Julio Diaz and Edgar Ramirez. (ECF No. 1 at 55). Respondent argues that the state court's denial of this claim was not objectively unreasonable in light of clearly established Supreme Court authority, nor was it based on an unreasonable interpretation of the facts in light of the evidence before the state court. (ECF No. 34 at 40).

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The claim also was raised in the petition for review, which the California Supreme Court summarily denied. The Court presumes that the California Supreme Court adjudicated the claim on the merits. See Richter, 562 U.S. at 99. The Court reviews the last reasoned state court opinion. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In rejecting Petitioner's sufficiency of the evidence claim, the California Court of Appeal stated:

> Appellant challenges the sufficiency of the evidence supporting the true findings on the great bodily injury enhancements attached to the attempted murder convictions (counts 1 and 2). He argues that the record lacks substantial evidence proving that appellant personally inflicted any of the injuries Diaz and Edgar sustained during the attack in the garage. This argument is not persuasive. Reasonable inferences that can be derived from the physical and testimonial evidence adequately support the jury's determination that appellant personally inflicted great bodily injury on Diaz and Edgar during the commission of the attempted murders.

As previously set forth, when the sufficiency of evidence is challenged the appellate court applies the substantial evidence standard of review. The appellate court views the evidence in the light most favorable to the judgment below to determine whether it contains substantial evidence from which the trier of fact could find the essential elements of the enhancement allegation proven beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) All inferences that can be reasonably drawn from the evidence are made in support of the judgment. The testimony of a single witness is sufficient to prove a disputed factual point. (*People v. Scott, supra,* 21 Cal.3d at p. 296.) We do not reweigh the evidence, resolve conflicts in the evidence or reevaluate the credibility of witnesses. (*People v. Mayberry* (1975) 15 Cal.3d 143, 150.)

Section 12022.7, subdivision (a) increases the sentence where the defendant personally inflicted great bodily injury on another, who is not his or her accomplice, during the commission of a felony. "To 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury. The defendant must directly, personally, himself inflict the injury." (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 349.) The plain language of section 12022.7 requires that the defendant personally inflict great bodily injury on the victim. "The intent to inflict great bodily injury need not be proven by direct evidence. Such intent may be inferred or presumed." (*In re Sergio R.* (1991) 228 Cal.App.3d 588, 601.)

Several courts have recognized an exception to this rule. "[W]hen a defendant participates in a group beating and when it is not possible to determine which assailant inflicted which injuries, the defendant may be punished with a great bodily injury enhancement if his conduct was of a nature that it could have caused the great bodily injury suffered." (*People v. Corona* (1989) 213 Cal.App.3d 589, 594.) A great bodily injury enhancement is properly sustained when the defendant "directly applies force to the victim sufficient to inflict, or contribute to the infliction of, great bodily harm." (*People v. Modiri* (2006) 39 Cal.4th 481, 486.) Nothing in the terms " 'personally' " or " 'inflicts' " as used in conjunction with " 'great bodily injury' " requires the defendant to act alone in causing the victim's injuries. (*Id.* at p. 493.) "Nor is this terminology inconsistent with a group melee in which it cannot be determined which assailant, weapon, or blow had the prohibited effect." (*Ibid.*) "[T]he defendant need not be the sole or definite cause of a specific injury." (*Id.* at p. 486; see *People v. Banuelos* (2003) 106 Cal.App.4th 1332, 1336–1338 [enhancement proper when group attacked victim and struck about head, even though surgeon could not tell exactly which object caused injuries]; *In re Sergio R., supra,* 228 Cal.App.3d at pp. 601–602 [enhancement proper where defendant was one of several assailants who fired guns into a group of people].)

Appellant asserts that the record does not contain evidence proving that he "inflicted *some* injury" on Edgar and Diaz. This claim is unconvincing. A review of the entire trial transcript and reasonable inferences that can be drawn from it reveals substantial evidence from which any reasonable jury could find that appellant actively participated in the group beating of Ruiz and Edgar during which they suffered lacerations and stab wounds. The evidence is sufficient to conclude that appellant's "conduct was of a nature that it could have caused the great bodily injury [that the victims] suffered." (*People v. Corona, supra,* 213 Cal.App.3d at p. 594.)

Oscar testified that he heard people beating up Edgar and Diaz. Then he saw five assailants leave the garage. One of the assailants was bleeding heavily and had to

be helped by the others. The assailants all fled from Oscar's house using Lorena Avenue; another group of people, who had not been inside the garage, fled by way of a different street. A blood trail was discovered leading away from the outside door onto Lorena Avenue and ending at the house where appellant's mother lived. Sergeant Bietz testified that he directed crime scene technicians to take two samples of blood deposited on the outside doorway because "I believe that I had two distinct different trails of blood that were left by two different people, and by taking the swab from each of those trails would identify the person who left those two samples behind." A sample from blood found on the outside doorway was consistent with Nathaniel's DNA profile. Two samples of the blood found outside the house where appellant's mother lived were collected. One sample was consistent with appellant's DNA profile. The other sample was consistent with Nathaniel's DNA profile. The rest of the blood drops along the blood trails were not tested. From this evidence and inferences that can be derived from it a jury could reasonably conclude that appellant was one of the assailants who fled from the garage to his mother's house.

Manuel testified that appellant was holding a "stick or a bat" when he returned to Oscar's house after briefly leaving. Appellant smashed windows on the Tahoe and a window on the Camaro. Manuel's testimony is corroborated by presence of blood consistent with appellant's DNA profile was found on the Camaro's trunk lid. Also, appellant had a laceration on his right middle finger. This is significant because police found two clubs made from tree branches, an aluminum bat and a kitchen knife inside the garage after Edgar and Ruiz were stabbed. Edgar and Ruiz suffered lacerations consistent with being beaten with a stick or bat and puncture wounds. This evidence and reasonable inferences that can be derived from it supports a determination that appellant struck Edgar and Ruiz with one of the sticks or the bat or that he stabbed them.[n.11]

> [n.11] DNA evidence recovered from the sticks, bat and knife was inconsistent with appellant's DNA profile. Yet this does not preclude the existence of sufficient support for the jury's verdict. A jury could reasonably conclude from evidence other than the DNA test results that appellant was one of the assailants in the garage, that he possessed a stick or bat, and that he personally used a stick, bat or knife during the attempted murders. If substantial evidence supports the verdict, "an appellate court is not warranted in reversing the judgment" because "the evidence may be susceptible of different inferences." (*People v. Jefferson* (1939) 31 Cal.App.2d 562, 566.) "The justices of an appellate court should not substitute their judgment for the conclusions of the jury and the trial judge and reverse a cause on the ground that the evidence of the prosecuting witness is inherently improbable, unless it is so clearly false and unbelievable that reasonable minds may not differ in that regard." (*Ibid.*)

Based on the foregoing, we hold that the true findings on the great bodily injury enhancements attached to the attempted murder counts (counts 1 and 2) are supported by substantial evidence from which a reasonable jury could find them true beyond a reasonable doubt and reject appellant's challenge to the sufficiency of the evidence.

Mancilla, 2013 WL 98794, at *7–9.

///

20

1   "A state court's decision is based on unreasonable determination of the facts under

2   § 2254(d)(2)[11] if the state court's findings are 'unsupported by sufficient evidence,' if the

3   'process employed by the state court is defective,' or 'if no finding was made by the state court

4   at all.'" Hernandez v. Holland, 750 F.3d 843, 857 (9th Cir. 2014) (quoting Taylor v. Maddox,

5   366 F.3d 992, 999 (9th Cir. 2004)). In denying the sufficiency of the evidence claim in the

6   instant case, the California Court of Appeal relied in part on a blood sample from the outside

7   doorway of the garage that was consistent with Nathaniel's DNA profile. The California Court of

8   Appeal stated in pertinent part:

9   > Oscar testified that he heard people beating up Edgar and Diaz.
10  > Then he saw five assailants leave the garage. One of the assailants
    > was bleeding heavily and had to be helped by the others. The
11  > assailants all fled from Oscar's house using Lorena Avenue;
    > another group of people, who had not been inside the garage, fled
12  > by way of a different street. A blood trail was discovered leading
    > away from the outside door onto Lorena Avenue and ending at the
13  > house where appellant's mother lived. Sergeant Bietz testified that
    > he directed crime scene technicians to take two samples of blood
14  > deposited on the outside doorway because "I believe that I had two
    > distinct different trails of blood that were left by two different
15  > people, and by taking the swab from each of those trails would
    > identify the person who left those two samples behind." A sample
16  > from blood found on the outside doorway was consistent with
    > Nathaniel's DNA profile. Two samples of the blood found outside
17  > the house where appellant's mother lived were collected. One
    > sample was consistent with appellant's DNA profile. The other
18  > sample was consistent with Nathaniel's DNA profile. The rest of
    > the blood drops along the blood trails were not tested. From this
19  > evidence and inferences that can be derived from it a jury could
    > reasonably conclude that appellant was one of the assailants who
    > fled from the garage to his mother's house.
20

21  Mancilla, 2013 WL 98794, at *8.

22      The state court record does not support the California Court of Appeal's determination

23  that a blood sample from the outside doorway of the garage was consistent with Nathaniel's

24  _____
    [11] Two provisions of the AEDPA, 28 U.S.C. § 2254(d)(2) and (e)(1), govern the review of state court determinations
25  of fact. The Court notes there is some confusion in Ninth Circuit cases as to how these provisions interact, and the
    Supreme Court has not addressed the relationship between § 2254(d)(2) and (e)(1). See Wood v. Allen, 558 U.S.
26  290, 300 (2010); Murray v. Schriro, 745 F.3d 984, 998–1001 (9th Cir. 2014) (acknowledging the Ninth Circuit's
    two lines of cases and noting that any tensions between various Ninth Circuit cases or between Ninth Circuit cases
    and limited statements by the Supreme Court will have to be resolved by the Ninth Circuit en banc or by the
27  Supreme Court). However, the Ninth Circuit's conflicting cases and the differences between the statutory provisions
    are not relevant here because state court findings that are based entirely on the state court record are reviewed for
28  "an unreasonable determination of the facts" under 28 U.S.C. § 2254(d). See Murray, 745 F.3d at 1001.

DNA profile. Only one witness testified about the DNA analysis of the evidence in this case. She testified that six blood samples[12] underwent DNA analysis at the laboratory—two from the road outside Petitioner's mother's house, two from the Camaro, and two (one of which was a control) from the fence at Oscar's house. (6 RT 1268–70). None of the six analyzed blood samples were from the outside doorway of the garage at Oscar's house. Further, the blood sample from the fence at Oscar's house was consistent with Diaz's DNA profile, not with Nathaniel's DNA profile. (6 RT 1269). Based on the foregoing, the Court finds that the state court's decision regarding Petitioner's sufficiency of the evidence claim was based, in part, on an unreasonable determination of fact. Accordingly, AEDPA deference does not apply, and the Court will review this claim *de novo*. See Liao v. Junious, --- F.3d ----, 2016 WL 1273233, at *8 (9th Cir. 2016); Maxwell v. Roe, 628 F.3d 486, 506 (9th Cir. 2010) ("[B]ecause the state court's decision was 'based on an unreasonable determination of the facts' under § 2254(d)(2), the AEDPA deference no longer applies.").

The United States Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012) (quoting Jackson, 443 U.S. at 319).

California Penal Code section 12022.7(a) increases a sentence when the defendant "personally inflicts great bodily injury on any person other than an accomplice in the

---

[12] These six blood samples do not include the objects found in the garage and Oscar's house that also underwent DNA analysis.

1   commission of a felony or attempted felony." The California Supreme Court has recognized that
2   participation in a group attack may satisfy section 12022.7(a). People v. Modiri, 39 Cal. 4th 481,
3   486, 495–96 (2006). In scenarios involving group beatings, a great bodily injury enhancement is
4   properly sustained when "the defendant physically joins a group attack, and directly applies force
5   to the victim sufficient to inflict, or contribute to the infliction of, great bodily harm." Id. at 486.
6   "[T]he defendant need not be the sole or definite cause of a specific injury." Id.

7          Viewing the record in the light most favorable to the prosecution, a rational trier of fact
8   could have found true beyond a reasonable doubt the great bodily injury enhancement for the
9   two attempted murder offenses. The trial testimony revealed that Petitioner was present at
10  Oscar's house, holding a bat or stick, and smashed windows on the Tahoe, Camaro, and house.
11  (5 RT 907–08, 911, 967–68, 1056–57). A blood sample taken from the Camaro was consistent
12  with Petitioner's DNA profile. (6 RT 1258). Five assailants beat Edgar and Diaz in the garage.
13  The five assailants, one of whom (not Petitioner) was bleeding heavily, fled Oscar's house using
14  Lorena Avenue. (5 RT 1057–59, 1064–65). Another group of people, who had not been in the
15  garage, fled using a different street. (5 RT 1059). Two distinct trails of blood led away from the
16  outside door of the garage to Petitioner's mother's house on Lorena Avenue. (5 RT 1089, 1120).
17  Two samples of blood found outside Petitioner's mother's house were collected and analyzed.
18  One sample was consistent with Petitioner's DNA profile and the other was consistent with
19  Nathaniel's DNA profile. (6 RT 1257–58, 1260). Police found a baseball bat in Oscar's house in
20  addition to two wooden sticks[13] and a kitchen knife inside the garage.[14] (4 RT 710). Petitioner
21  sustained a laceration on his right middle finger consistent with an injury from a knife or broken
22  glass. (5 RT 1117–19). Edgar sustained multiple lacerations and puncture wounds in addition to
23  a collapsed lung. (5 RT 1110–11; 6 RT 1285; 7 RT 1517–18). Diaz sustained multiple

24

---

25  [13] The California Court of Appeal referred to these as "clubs made from tree branches." Mancilla, 2013 WL 98794, at *8. A witness referred to the objects as wooden sticks, and later explained that the sticks were "more or less a tree branch." (4 RT 721).
26  [14] Swabs taken from the kitchen knife were consistent with the DNA profiles of Diaz, Nathaniel, and Francisco. (6 RT 1264). Swabs taken from the bat and one of the sticks were consistent with the DNA profile of Alvarez. (6 RT 1265–66). A swab taken from the other stick was consistent with the DNA profile of Diaz. (6 RT 1266). None of the swabs taken from the objects found in the residence and garage were consistent with the DNA profiles of Petitioner or Edgar, one of the victims.

lacerations and puncture wounds. (5 RT 1069–70; 6 RT 1280). On the basis of this evidence and presuming all inferences were made in favor of the prosecution, a rational trier of fact could infer that Petitioner was present in the garage when Edgar and Diaz were beaten, that Petitioner possessed a stick or bat, and that Petitioner personally used a stick, bat, or knife during the group beating in the garage.

Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Under this deferential standard of judicial review, the Court finds that a rational trier of fact could find the essential elements of the great bodily injury enhancement beyond a reasonable doubt. Accordingly, Petitioner is not entitled to habeas relief on this claim, and it must be denied.

## V.

## RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within

the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v.</u> <u>Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **April 6, 2016**        /s/ _Erica P. Groj_

                                 UNITED STATES MAGISTRATE JUDGE